UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MITZI FRANCINE TORRES,

                Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4359 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Mitzi Francine Torres ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. (Compl., Dkt. 1; Olinsky Aff., Dkt. 20-1, ¶ 1.) After Plaintiff moved for judgment on the pleadings, the parties stipulated to remand the case to the SSA, where Plaintiff was awarded roughly $94,688 in past-due benefits. (Olinsky Aff., Dkt. 20-1, ¶ 4.) Plaintiff's counsel, Howard D. Olinsky ("Olinsky"), now moves for $8,672 in attorney's fees pursuant to 42 U.S.C. § 406(b) ("Section 406(b)"). (*Id.* ¶ 7.) For the reasons explained below, Olinsky's motion is granted, and he is awarded $8,672. Upon receipt of this award from the government, Olinsky shall promptly refund to Plaintiff the sum of $5,384.65, which represents the Equal Access to Justice Act ("EAJA") fees already received by counsel. (*See* 11/5/2021 Dkt. Order.)

## BACKGROUND

After Plaintiff was denied benefits at the agency level, Plaintiff retained Olinsky and filed this action on September 17, 2020. (Compl., Dkt. 1.) After Plaintiff filed a motion for judgment on the pleadings, (Mot. J. Pleadings, Dkt. 12), the parties stipulated to remand the case to the SSA, (Joint Mot. Remand, Dkt. 14), and the Court remanded the case for further proceedings, (8/7/2021 Dkt. Order). The Court then awarded Plaintiff $5,384.65 in EAJA fees. (11/5/2021 Dkt. Order.)

On February 25, 2025, the SSA mailed Plaintiff a Notice of Award letter informing her that she would receive approximately $94,688 in past-due benefits, with 25% ($23,672) withheld as possible fees for her attorney. (Award Notice, Dkt. 20-3, at ECF[1] 5.) By motion filed on March 19, 2025, Olinsky now seeks $8,672 in attorney's fees for work performed before this Court. (Olinsky Aff., Dkt. 20-1, ¶ 7.)

Along with that motion, Olinsky submitted a fee agreement demonstrating that Plaintiff retained Olinsky on a 25% contingency-fee basis, (Fee Agreement, Dkt. 20-2, at ECF 2), and itemized time records indicating that he had spent a total of 29.2 hours litigating this matter before this Court, (Olinsky Timesheet, Dkt. 20-4, at ECF 3). Of those 29.2 hours, 22.5 hours were attorney time and 6.7 hours were paralegal time. (Olinsky Aff., Dkt. 20-1, ¶ 9). If that paralegal time is billed at $100 per hour and deducted, Olinsky's requested effective hourly attorney rate is $355.64. (*Id.*)

## DISCUSSION

**I.      Timeliness**

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing period prescribed by Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure. *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," and the law presumes that "a party receives communications three days after mailing." *Id.* at 88–89, n.5. Furthermore, because Rule 54(d)(2)(B) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Though Olinsky does not state when precisely he received notice of Plaintiff's benefits award, Plaintiff's Notice of Award is dated February 25, 2025, and marked "received" on February 27, 2025. (Award Notice, Dkt. 20-3, at ECF 2.) Since Olinsky filed the motion on March 11, 2025, 14 days after the earliest date he could have received notice, it is considered timely. (Mot. Att'y Fees, Dkt. 20.)

## II.   Reasonableness of the Requested Fee

### A.   Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) the character of the representation and the results the representative achieved; (2) whether counsel was responsible for undue delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits;[2] and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney. *Id.* at 849.

With respect to whether a fee would be a "windfall," the Second Circuit emphasized in *Fields* that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and,

---

[2] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery. [W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." (cleaned up)).

3

in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider: (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level"; (3) "the satisfaction of the disabled claimant"; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–55. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 853.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund to the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under [Section 406(b)] are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-0548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)).

### B. Application

Here, Plaintiff retained Olinsky pursuant to a 25% contingency-fee agreement. (Fee Agreement, Dkt. 20-2, at ECF 2.) There are no allegations of fraud or overreaching with respect

to the retainer agreement. Olinsky seeks $8,672 in fees for 29.2 hours of work which, after deduction for 6.7 hours of paralegal work at $100 per hour, is an effective hourly rate of $355.64 per hour for attorney work. (Olinsky Aff., Dkt. 20-1, ¶ 9); *see Long v. Comm'r of Soc. Sec.*, No. 18-CV-1146 (PKC), 2020 WL 6545904, at *3 (E.D.N.Y Nov. 6, 2020) (deducting paralegal work at the rate of $100 per hour to calculate the effective hourly attorney rate). For the reasons explained below, the Court finds that amount to be reasonable in the context of this case.

To determine reasonableness, the Court first considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849. The fee requested here is in line with the character of the representation and the results achieved. Olinsky was able to secure a joint stipulation to remand the case to the SSA, which re-heard and granted Plaintiff's claim for Disability Insurance Benefits. (Olinsky Aff., Dkt. 20-1, ¶ 8.) As such, this factor does not require a downward adjustment of Olinsky's fees.

Second, the Court must determine whether counsel was responsible for "undue delay." *Fields*, 24 F.4th at 849. There was no undue delay in the litigation before this Court that would warrant any reduction of Olinsky's fees.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Id.* at 849. The Court considers four factors in determining whether a requested amount qualifies as a windfall.

First, with respect to the ability and expertise of Olinsky and whether he was particularly efficient, the Court finds that 29.2 hours was a reasonable amount of time to spend on this matter. In *Fields*, the Second Circuit found that 25.8 hours spent reviewing a 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of remand, demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work,

justifying a *de facto* hourly rate of $1,556.98. *Id.* at 854. Here, the transcript was 801 pages, (Administrative Tr., Dkt. 10), the brief in support of Plaintiff's motion for judgment on the pleadings was 14 pages, (Pl.'s Mem., Dkt. 13), and Olinsky obtained a stipulation of remand (Joint Mot. Remand, Dkt. 14). The Court further notes that "Olinsky has focused his practice on Social Security disability law for over 30 years, and his firm has handled over 6,000 Social Security appeals in federal courts." *Rivera v. Comm'r of Soc. Sec.*, No. 20-CV-8444 (AEK), 2024 WL 4764481, at *3 (S.D.N.Y. Nov. 13, 2024). In light of Olinsky's ability and expertise, and the fact that the transcript and briefing here are of similar length to those in *Fields*, the Court finds that the amount of time spent on this matter is reasonable. Accordingly, this factor does not warrant any downward adjustment.

Second, with respect to the nature and length of Olinsky's professional relationship with Plaintiff, the Court notes that Olinsky did not represent Plaintiff in front of the SSA before filing this suit. In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including in four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See Fields*, 24 F.4th at 855. Here, Plaintiff retained Olinsky only after the conclusion of the administrative process, (Fee Agreement, Dkt. 20-2, at ECF 2), and therefore it reasonably might have taken Olinsky slightly longer than the attorney in *Fields* to review the administrative record. *See Velasquez v. Comm'r of Soc. Sec.*, No. 21-CV-0892 (PKC), 2025 WL 1249604, at *4 (E.D.N.Y. Apr. 30, 2025). Furthermore, Olinsky requests only $8,672 of the total $23,672 in potential fees withheld by the SSA because Plaintiff was represented on remand by an "agency attorney [who] will file a Fee Petition (406a) for $15,000" for that representation.

(Olinsky Aff., Dkt. 20-1, ¶¶ 5–7.) This factor therefore does not warrant any downward adjustment of Olinsky's fees.

Third, with respect to the "satisfaction of the disabled claimant," *Fields*, 24 F.4th at 855, the Court notes that Olinsky obtained the desired result, assisting Plaintiff in recovering substantial past benefits as well as securing future benefits. There is no evidence in the record that Plaintiff was dissatisfied with Olinsky's performance. A downward departure is not warranted based on client dissatisfaction.

Lastly, with respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," the Court notes that this case was not as uncertain as in *Fields*. There, the SSA denied the claim even after the parties stipulated to a remand, and only later awarded benefits after a second appeal and remand. *Fields*, 24 F.4th at 850–51. Here, while the SSA initially rejected the claim, the parties stipulated to a remand after the initial briefing, (*see* Joint Mot. Remand, Dkt. 14), after which the SSA re-heard Plaintiff's claim and awarded her benefits. The fact that this case did not require a second round of litigation in federal court indicates that this case was far less uncertain than the underlying case in *Fields*. Nevertheless, when assessed in light of the Court's determinations regarding the first, second, and third factors, the Court finds that this factor does not warrant a downward adjustment.

Accordingly, the Court finds the requested amount to be reasonable. Upon receiving the Section 406(b) award, Olinsky must remit to Plaintiff the $5,384.65 in fees received pursuant to the EAJA.

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted, and Olinsky is awarded $8,672 in attorney's fees. Upon receipt of this award, Olinsky shall promptly refund to Plaintiff the sum of $5,384.65, which represents the EAJA fees that he already received. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 8, 2025
      Brooklyn, New York